**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION AT JACKSON**

| | | |
|---|---|---|
| GENERAL ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:13-cv-1106 |
| v. | ) | |
| | ) | JURY DEMAND |
| NATIONAL TRUST INSURANCE | ) | |
| COMPANY, | ) | Judge Bryant |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

COMES now the Plaintiff, GENERAL ELECTRIC COMPANY ("GE") and, pursuant to Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, submits the following Amended Complaint:

### PARTIES, JURISDICTION AND VENUE

1.     GE is a corporation organized under the laws of the State of New York with its principal place of business in the State of Connecticut.

2.     National Trust Insurance Company ("National Trust") is an insurance business organized under the laws of the State of Indiana with its principal place of business in the State of Florida.  National Trust may be served with process through the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Nashville, Tennessee 37243.

3.     The Court has personal jurisdiction over National Trust because National Trust issued the policy of insurance at issue in this case to a business located in the

Western District of Tennessee through an agent located in the Western District of Tennessee.  Upon information and belief, the policy of insurance was delivered in the Western District of Tennessee.

4.      The Court has subject matter jurisdiction under 28 U.S.C. § 1332 because GE and National Trust are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5.      Venue is proper in the Western District of Tennessee under 28 U.S.C. § 1391(a)(1) (2010) because National Trust is subject to the Court's personal jurisdiction and thus resides in the Western District of Tennessee under 28 U.S.C. § 1391(c) (2010). Venue is also proper under 28 U.S.C. § 1391(a)(2) (2010) because a substantial part of the acts and omissions giving rise to this suit, including the incident underlying this suit, all communications between the named insured and National Trust's agent and the delivery of the policy of insurance at issue, occurred in the Western District of Tennessee.

6.      Venue is proper in the Eastern Division of the Western District of Tennessee under Local Rule 3.3(b)(3) because all of the events and omissions giving rise to this suit that occurred in the Western District of Tennessee occurred in the Eastern Division of the Western District of Tennessee, and the claim arose in the Eastern Division of the Western District of Tennessee because the incident underlying this suit occurred in the Eastern Division of the Western District of Tennessee.

## THE INSURANCE POLICY

7.      National Trust issued a policy of commercial general liability insurance, Policy No. CPP0008475 3 (the "Policy") to Industrial Maintenance Services of Tennessee, Inc.

8.      The Policy was in force on November 19, 2010.

9.      Industrial Maintenance Services of Tennessee, Inc. changed its name to Design-Fab, Inc. some time after November 19, 2010.  The Policy remained in force despite this name change.  This Complaint will refer to the insured business as "Design-Fab" regardless of its name at the time in question.

10.     Under the Policy, National Trust agreed that, if it defended Design-Fab in a suit, it would also defend indemnitees of Design-Fab named as parties to the suit if all of the following conditions were met:

A.      "The 'suit' against the indemnitee seeks damages for which [Design-Fab] has assumed the liability of the indemnitee in a contract or agreement that is an 'insured contract;'

B.      [The Policy] applies to such liability assumed by [Design-Fab];

C.      The obligation to defend, or the cost of defense of, that indemnitee, has also been assumed by [Design-Fab] in the same 'insured contract;'

D.      The allegations in the 'suit' and the information [National Trust] know[s] about the 'occurrence' are such that no conflict appears to exist between the interests of [Design-Fab] and the interests of the indemnitee;

E.      The indemnitee and [Design-Fab] ask [National Trust] to conduct or control the defense of the indemnitee in such suit and agree that [National Trust] can assign the same counsel to defend the insured and the indemnitee; and

F.      The indemnitee" cooperates in the defense of the suit.

11.     The Policy defined an "insured contract" as, among other things, "that part of any other contract or agreement pertaining to [Design-Fab's] business . . . under which

[Design-Fab] assume[s] the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."

12.     On information and belief, National Trust retained FCCI Insurance Group to adjust claims made under the Policy.

### DESIGN-FAB'S INTERACTIONS WITH NATIONAL TRUST'S AGENT

13.     Design-Fab procured the Policy from James Keith Perry at White & Associates Insurance Agency in Jackson, Tennessee ("White & Associates").  National Trust has appointed Mr. Perry as its agent under Tenn. Code Ann. § 56-6-115(a), and, as a result of this appointment, various employees of White & Associates solicit and negotiate applications for insurance on behalf of National Trust.

14.     Design-Fab is in the business of providing maintenance support for industrial facilities.

15.     Mr. Perry and White & Associates were aware of the nature of Design-Fab's business when the Policy issued.

16.     By virtue of its agency relationship with Mr. Perry and White & Associates, National Trust was aware of the nature of Design-Fab's business when the Policy issued.

17.     From time to time, the companies for which Design-Fab provided maintenance services demanded that Design-Fab provide a certificate of insurance.

18.     When Design-Fab's clients made such a demand, Design-Fab sometimes procured the requested certificate of insurance from White & Associates.

19.     Mr. Perry and White & Associates knew and intended that Design-Fab would provide information about its insurance policies, including the Policy, to some of

its clients. Moreover, Mr. Perry and White & Associates knew and intended that Design-Fab's insurance policies, including the Policy, would benefit some of Design-Fab's clients.

20.      By virtue of its agency relationship with Mr. Perry and White & Associates, National Trust knew and intended that Design-Fab would provide information about its insurance policies, including the Policy, to some of its clients. Moreover, National Trust knew and intended that Design-Fab's insurance policies, including the Policy, would benefit some of Design-Fab's clients.

21.      From time to time, the companies for which Design-Fab provided maintenance services demanded that Design-Fab name them as additional insureds on its policies of insurance, including the Policy.

22.      When Design-Fab's clients made this type of demand, Design-Fab would sometimes contact White & Associates and ask them to name the clients as additional insureds on its policies of insurance, including the Policy.

23.      Mr. Perry and White & Associates knew and intended that some of Design-Fab's clients would be named as additional insureds on its policies of insurance, including the Policy.

24.      By virtue of its agency relationship with Mr. Perry and White & Associates, National Trust knew and intended that some of Design-Fab's clients would be named as additional insureds on its policies of insurance, including the Policy.

## DESIGN-FAB'S INTERACTIONS WITH GE

25.      From time to time, Design-Fab provided services to GE at its plant in Selmer, Tennessee.

26.     As part of GE's Contractor Qualification Review process, GE required that Design-Fab fill out a Contractor Qualification Review form.  On November 6, 2009, Design-Fab filled out this form and represented that it held "liability insurance" with "FCCI Insurance Group."   On information and belief, Design-Fab actually held a commercial general liability policy with National Trust in November, 2009.

27.     In 2010, Design-Fab won a GE contract to provide certain driveway repairs at the Selmer plant.  Design-Fab ultimately performed these driveway repairs in June and July of 2010.

28.     The contract between Design-Fab and GE for the driveway repair project (the "Purchase Order") required Design-Fab to "release, defend, hold harmless and indemnify" GE against, among other things, "actual or alleged claims, demands, losses, liability, judgments, damages, costs, expenses or liabilities (including attorney fees, overhead and court costs) including without limitation claims for death, personal injury, or property damage resulting from arising out of or in any way connected to any act, failure to act, neglect or omission of" Design-Fab "during the performance of" its contract with GE.

29.     Under the terms of the Purchase Order, Design-Fab agreed to assume GE's tort liability for personal injury or property damage to third parties arising out of or in any way connected with Design-Fab's acts, failures to act, negligence and omissions.

30.     In addition, as part of Design-Fab's qualification as a GE contractor on the driveway repair project specifically, GE requested that Design-Fab provide it a current certificate of insurance.  Based on this request, Design-Fab asked that Becky Baxter of White & Associates provide a certificate of insurance to GE.   On May 27, 2010, White

& Associates provided an ACCORD Certificate of Liability Insurance to GE that included, among other insurance policies, the Policy.

31.     The ACCORD Certificate of Liability Insurance indicated that the "insurer" was "FCCI."

32.     When White & Associates provided this Certificate of Insurance to GE, White & Associates knew and intended that GE would benefit from the Policy.

33.     By virtue of its agency relationship with Mr. Perry and White & Associates, in May, 2010, National Trust knew and intended that GE would benefit from the Policy.

## THE LAWSUIT AGAINST DESIGN-FAB AND GE

34.     As part of the driveway repair project at the Selmer, Tennessee plant, Design-Fab obtained a roll-off container (the "Container") from Waste Management of Mississippi, Inc. ("Waste Management").  Design-Fab placed various construction waste materials, including concrete, dirt and asphalt, in the Container.

35.     At the conclusion of Design-Fab's work at the Selmer, Tennessee plant, the Container was significantly overloaded, containing more than 10 tons too much material.  As a result, Waste Management was unable to remove the Container from the Selmer, Tennessee plant.

36.     On November 19, 2010, Waste Management employee Danny Joe Moore was injured when he attempted to move the Container.

37.     Mr. Moore retained counsel, and on November 30, 2010, Mr. Moore's counsel wrote a demand letter to, among other entities, Design-Fab and GE.

38.     On April 28, 2011, GE's insurer wrote to White & Associates to demand that FCCI Insurance Group defend and indemnify GE under the Policy.  At that time, GE and its insurer did not know that National Trust, rather then FCCI Insurance Group, was the entity that had issued the Policy, as the ACCORD Certificate of Liability Insurance issued to GE identified the "insurer" as "FCCI."

39.     On August 28, 2011, Kathy Montgomery of FCCI Insurance Group, acting on behalf of National Trust, wrote to Mr. Moore's counsel and declined to pay anything on Mr. Moore's claim.

40.     On October 25, 2011, Mr. Moore and his wife filed suit against GE and Design-Fab in the United States District Court for the Western District of Tennessee (the "Moore Lawsuit").  Waste Management later intervened in the Moore Lawsuit.

41.     On November 22, 2011, Ms. Montgomery, still acting on behalf of National Trust, wrote to GE's insurer and declined to defend and indemnify GE.

42.     On January 25, 2012, GE filed a cross-claim against Design-Fab for breach of contract, contractual indemnity and common law indemnity.

43.     On January 30, 2012, GE's counsel wrote to Tracy A. Overstreet, Esq., the attorney retained by National Trust to defend Design-Fab, to renew its request that Design-Fab and National Trust defend and indemnify GE.

44.     Neither Mr. Overstreet nor Design-Fab nor National Trust ever responded to the January 30, 2012 letter.

45.     As a result of National Trust's failure to defend and indemnify GE, GE retained its own counsel to defend the Moore Lawsuit.  Ultimately, GE reached a settlement with Mr. and Mrs. Moore and Waste Management.

46.     Combined, GE's costs to date in defending the Moore Lawsuit and the amount of its settlement payment to Mr. and Mrs. Moore and Waste Management exceed $78,000.  GE would not have had to incur any of these costs had National Trust assumed GE's defense.  In addition, GE continues to incur costs in its prosecution of its cross-claim against Design-Fab and its prosecution of this action.  GE would not have to continue incurring these costs if National Trust had assumed GE's defense.

## COUNT I: BREACH OF CONTRACT

47.     The Policy is a valid and enforceable contract between Design-Fab and National Trust.

48.     Mr. Perry and White & Associates, National Trust's appointed agents, knew and intended that GE would benefit from the Policy.

49.     By virtue of its agency relationship with Mr. Perry and White & Associates, National Trust knew and intended that GE would benefit from the Policy.

50.     Design-Fab knew and intended that GE would benefit from the Policy.

51.     GE was an intended third party beneficiary of the Policy.

52.     The Purchase Order was an "insured contract" as the Policy defines that term.

53.     The Moore Lawsuit sought damages for which Design-Fab had agreed to assume GE's liability in the Purchase Order.

54.     The Policy applied to GE's liability that Design-Fab had agreed to assume.

55.     Design-Fab agreed to defend and indemnify GE in the Purchase Order.

56.     Because the Moore Lawsuit sought damages from GE as the owner of the premises where Design-Fab had allegedly created a dangerous condition and under a

vicarious liability theory based on Design-Fab's alleged negligence, no conflict existed between the defense of GE and the defense of Design-Fab.

57.    GE repeatedly asked National Trust to control and conduct its defense.

58.    On information and belief, Design-Fab also asked National Trust to control and conduct GE's defense.

59.    Had National Trust agreed to conduct and control GE's defense, GE would have cooperated fully in the defense of the Moore Lawsuit, as required by the Policy.

60.     Because all of the conditions of the Policy were met, National Trust had an obligation to defend and indemnify GE in the Moore Lawsuit.

61.    National Trust did not defend and indemnify GE in the Moore Lawsuit.

62.    GE incurred attorney fees and costs in the Moore Lawsuit and ultimately paid a settlement to Mr. and Mrs. Moore and Waste Management.  GE would have incurred none of those expenditures—which presently exceed $78,000—had National Trust defended and indemnified it.

WHEREFORE, Defendant GENERAL ELECTRIC COMPANY prays for the following relief :

A.    That a jury of at least six persons be empaneled to try all issues so triable;

B.    That the Court award GE damages in the amount of all of its costs, fees and expenses incurred in the defense of the Moore Lawsuit as well as the amount of the settlement with Mr. and Mrs. Moore and Waste Management and that the Court award GE pre-judgment interest on these damages;

C.    That the Court award GE all of its costs, fees and expenses incurred in the

prosecution of its cross-claim against Design-Fab and this Action, including discretionary

costs under Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920; and

D.    Any other relief the Court deems proper.

Dated this 19th day of August, 2013.

Respectfully Submitted,

LEWIS, KING, KRIEG & WALDROP, P.C.

By:/s/ Ryan N. Clark
J. Randolph Bibb, Jr., B.P.R. No. 09350
Ryan N. Clark, B.P.R. No. 29105
424 Church Street, Suite 2500
Post Office Box 198615
Nashville, Tennessee 37219
(615) 259-1366 (telephone)
(615) 259-1389 (facsimile)
rbibb@lewisking.com
rclark@lewisking.com

*Attorneys for Plaintiff*
*General Electric Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and exact copy of the Amended Complaint has been served upon the counsel for parties in interest herein by operation of the Court's electronic case filing system:

Stephen W. Vescovo, Esq.
THOMASON, HENDRIX, HARVEY
JOHNSON & MITCHELL, PLLC
2900 One Commerce Square
40 South Main Street
Memphis, Tennessee 38103
vescovos@thomasonlaw.com

*Counsel for Defendant*

Dated this 19th day of August, 2013.

/s/ Ryan N. Clark
Ryan N. Clark